May it please the court, my name is Charles Walston, and I'm appearing for Shelly Lal, and I'd like to reserve two minutes for rebuttal. The overall question in this case is whether the district court abused its discretion when it denied Ms. Lal's Rule 60b-6 motion for relief from the judgment that was entered into before. And what Ms. Lal's basic plea was there and here is an opportunity to have her case heard on the merits. Now, in deciding that issue, there are really three underlying issues. One is the case governed by the Taney case, and we've set out in our briefs at some length why the district court erred in Holt ruling that the Taney was limited to default judgment cases. And instead, the decision in a nutshell applied, which involved Rule 68 offer of judgment. When pointing to court in two respects, one is the actual language of Taney at page 1168, where the court talked about demonstrating circumstances beyond the party's control that prevented him from proceeding with the prosecution or defense of the action. And this clearly is a case where Ms. Lal has claimed that circumstances beyond her control prevented her from prosecuting the case. And we submitted in our supplemental authorities some recent decisions of panels, which have relied and followed on Taney, both with regard to a plaintiff's lawyer failing to respond to a summary judgment and also a pro se plaintiff unable to comply with pretrial deadlines. If you don't mind my interrupting, here's where I'm, here's the soft spot from here, the point that I'm having some difficulty with. The court, our court in Latshaw says Rule 68 is different. Taney is really default judgment. Well, it seems to me that that doesn't control here. Or I'll say it this way, that Latshaw doesn't forbid the relief here because default judgment is judgment against the defendant for failure to do something. This dismissal is, under 41B, is essentially the equivalent of default judgment, but as against the plaintiff. So it seems to me that for my purposes, I don't speak for my colleagues, you're okay under Taney. My problem, or what I'm hesitating over is, the district judge made quite a thing over how long it took her from the time she realized that her lawyer had been leading her down the garden path, not only not doing things, but also lying to her. It took her quite a while before she found a substitute counsel and before that new counsel then filed the motion under Rule 60. What's your response to that? My response, Your Honor, is that looking at the circumstances, it wasn't really that long. Okay. Ms. Lal really realized that things were totally off sometime in October when she first found out that the case had been dismissed, contacted Mr. Spahr again, and he again reassured her that he had refiled the case in state court, that he was taking care of everything. And she, hope over experience, she believes him. She believed him for a short time. She did go ahead and file a complaint with the bar less two weeks after she discovered that the case had been dismissed. The bar investigator showed up fairly shortly thereafter, early November. He said, this isn't the first time Mr. Spahr has done this. You should find yourself another lawyer. She immediately started trying to find another lawyer. She went. She contacted another firm, which wasn't able to take the case, and she sets out in her declaration that she contacted a number of other lawyers, and it wasn't until December that she was able to find Ms. Fairbairn, who agreed to take the case. And this was not, in its posture, a really attractive case for another lawyer to take, because the case had been thrown out back in February. She'd have to go through this whole process of getting the case back into shape. It was a case of contingency base. So it wasn't surprising that it took her basically a month and a half to find another lawyer. Ms. Fairbairn. It takes her longer than that, that is to say, she finds out on the 1st of October. She finally contacts Ms. Fairbairn. Your narrative seems to me absolutely accurate in terms of what she did in the sequence. But she finally finds Ms. Fairbairn at the very end of December. So it's October. So it's almost three months. Right. It's three months after. After she first finds out. After she first finds out. Yeah, right. But less than three months after she finally realizes that it's just hopeless with Mr. Spahr. Yeah. Okay. What do I do with or what do we do with this declaration we have in the record from the expert on memory who says, as soon as the lawyer tells these CHP guys that they don't need to worry about it, their memories, they're going to just do a sort of a, they're going to dump their memory files and they won't remember. Oh, yeah. Anyway, this is a very interesting theory, I must say, in over 40 years' practice of law. I've never run it across, across it before. And I've had cases, you know, this case at this point really wasn't that old. And the notion that these officers who had been interviewed, done reports, contemporaneous with this incident, memory couldn't be refreshed from this extensive documentation seems to be purely hypothetical. And the expert even sort of says that. Well, maybe their credibility would be lessened. And it's interesting that the psychologists never talked to the officers themselves, never, to find out what their actual situation is. The state of California did not file a declaration from either of these officers saying, yes, once I heard the case was out, my memory just vanished. Yeah, they may not want to do that because at some point these guys might have to testify. And they don't want to say, well, you know, back there, yeah, I said my memory was gone, but I've had a case of recovered memory. So maybe there's a reason they don't want to do that. But it seems to me they have to come forward with some actual evidence supporting this, which to me is kind of an amazing claim because everything I've ever read about police officers who shoot somebody and kill somebody is something that lives in their minds practically forever. It's not something they just kind of get rid of because a lawyer phones up and says, hi, the case has been dismissed. They say, thanks very much. Now you can forget all about it. And the police officer says, right, okay. And he turns the switch and it's gone. And this can be tested. You know, their depositions will be taken. They want to say, yeah, once I heard this, I totally forgot everything. And they hand their reports. Does this refresh your recollection? It's hard for me to believe that they're going to say, no, I just, nothing, I just can't remember anything about it. You started off your argument by saying the ultimate question here was abuse of discretion. Yes. So take into account all of what the district court judge considered here. Yes. Why is there an abuse of discretion? Why wasn't this within her discretion? Well, because it's in her discretion that there are certain standards to be followed. And our position is given the circumstances in which the law found herself in, her complete abandonment by her attorney, her efforts to find an attorney and get back in court, which is all she wants to do is get back in court and have her case heard. It was an abuse of discretion not to reinstate the case and let it go forward for the reasons that the district court set out. We've laid out at length this preliminary matter. The original dismissal, we believe, was in error. Of course, this appeal is not directly for an act. But totality of the circumstances, we just feel that Ms. Ball should have been allowed to reinstate her case. Okay. Thank you. You saved a minute or so, and we'll make sure you get a chance to respond. Thank you. May it please the Court, John Devine from the Deputy Attorney General's, excuse me, from the Attorney General's Office, appearing on behalf of the State of California, the California Highway Patrol, and Officers Newman and Otterby. The first point I would like to raise is the legal standard that the court applied. And there's been some discussion as to whether Taney or Latschot applied. First of all, the district court said that it didn't need to resolve which of those cases actually applied in her decision. And then she did go on to apply the standard from Latschot. With respect to Taney, because there has been a lot of discussion of it. Well, let me make sure I understand your argument and what the district judge did. The district judge writes, the court need not definitively resolve this issue, that is to say, how far Taney goes, for Latschot provides sufficient guidance. As I read it, she relies on Latschot to say it doesn't apply to this case. That Taney does not apply. Right. But the court correctly identified that language where she did not definitively resolve the issue. That was my point with respect to this Taney-Latschot divergence. Okay. Yeah, I'm with you. And with respect to Taney, there's really a critical fact with Taney that hasn't been identified in the briefs. And Taney itself is a large extension of whether or not a client would be held answerable to the actions of their attorney. But in the Taney decision itself, the court said a proper finding of culpable conduct by Taney would be sufficient to justify the district court's refusal to grant a Rule 60B motion. And in Taney, once the party learned about his attorney's actions, he learned about them in April 2000, it was in a matter of weeks that the court was alerted to that. And that happened at the hearing of this motion to set aside the judgment. The court said that had she even received a phone call back in October when Ms. Law first learned about the dismissal of the case, that she would have treated it as a motion to set aside the judgment or at least been apprised of the fact that there was some divergence between what was happening with her and her counsel. How many witnesses were there to this shooting? Oh, there were dozens. There were several law enforcement agencies and then there were different law enforcement officers just within CHP at the scene. And how many of those witnesses were told you can forget all about it? You probably can see where I'm headed with this. The two individual officers who were the defendants were told whatever they were told, listen, we've got a dismissal, you can relax or whatever they're told. Was anything said to the witnesses, hey, you're off the hook, you can forget all about it? There's nothing in the record that says that. No. So we have testimony that, okay, these two guys who actually did it, maybe they've forgotten about it because they were told they could, although I have to say I'm a little skeptical how much they will forget, having shot somebody and killed him. But the others who would be witnesses to this are not told anything to this effect? That's correct, Your Honor. Well, I should qualify because I don't know whether they told their colleagues once the case was dismissed. I don't know whether there's a second article. Right, but there's nothing in the record to say that. Right, no. And the expert testimony we have from the declaration goes only to the two defendants? Correct, Your Honor. Yeah, okay. Well, I think the phenomenon overall is, you know, I think it applies. I mean, he does cite that you don't remember where necessarily you parked your car last week, but you remember where you parked it this morning. So I think he's identifying a general phenomenon. I just don't want to say that this phenomenon just applies to these two officers. I think it applies more generally. So is it the State's position that Taney precludes Rule 60b-6 in this circumstance? No, I think it's an extension of Taney, and I think that Taney is factually distinguished from this case because of the absence of delay that was not present in Taney but which is present here. So what is somebody in Ms. Lau's position supposed to do? Well, I think what the Court identified in the Court's finding was that she didn't take a diligent action. From the record. But there's no time limit in Rule 60b-6, is there? No, there isn't. Well, it's reasonable. Well, what's reasonable? Well, I think the court decided that the district court decided that it wasn't reasonable because she had this information and then she didn't do anything with it. And I think this happens against the backdrop where Ms. Lau initially retains an attorney within two days. Is it fair to expect an unsophisticated litigant to always question what their lawyer tells them? I think under these circumstances, well, no. And the lawyer told her we're going to file it in state court. Yes. And she, that very same day, calls up Mr. Herron, the other attorney she's been consulting, and she tells him that an office assistant or he has done a search and that that's not true. And then she files a complaint with the state bar. Right. She does that on October 12th, doesn't elect a federal court. Now, I thought that was an interesting comment, having served at the district court for a number of years. I mean, if a litigant were to come into the court and say, hey, judge, my lawyer's not attending to my case, I mean, I would say. I'm not saying. Yeah, you're in the wrong place, buddy. I'm not saying that the district court's there to take litigants' complaints. But what Mrs. Law said in her declaration was if I had known that he had failed to show up for one of these hearings, I would have showed up myself. And I think the district court said, the district court was looking at all the circumstances and saying, well, you got a lawyer after two days. You said yourself if you had known of the dismissal, you would have shown up. No, no, that's not what she said. She said if I had known that I was supposed to show up for a hearing, I would have showed up myself. She didn't say if I had known of the dismissal, I would have showed up. Because after the dismissal, she doesn't show up. After the dismissal, she goes looking for another lawyer. I don't have the exact verbiage of it. It's obviously in her declaration. Yeah. But I think the sense of it conveyed was that had she known that her case was dismissed, she would have taken it upon herself. No, I did not read it that way at all. What she says very clearly is had I known I was supposed to show up for a hearing and that a hearing was scheduled and I hadn't been told about it and my lawyer wasn't showing up, I would have shown up for that hearing. She does not say. Correct, correct. Had I known of the dismissal, I would have shown up myself. And Judge Hamilton says she faults her for not showing up now that she knows of the dismissal. Correct. Correct. I think what the Court inferred was that she was able to take some action inferred that, well, she's already expressed inability. Of course. That's all I know. On that, I agree with you. That's exactly what she says. But the Court did make the finding that she didn't pursue it timely. And with respect to Dr. Bjork, she made her – the district court also made the finding that he was credible and persuasive, and that went unrebutted. And with respect to Dr. Bjork, I'd like to make – Did he actually show up in the courtroom? No. So we're just reading the piece of paper. Correct. Do we owe any deference to the district judge under that circumstance? That is to say, is the district judge in a privileged position compared to us as to how credible Dr. Bjork's idea is? Well, I think she made – based on what he was saying and what she had observed, I mean, what her findings – I don't think – I mean, certainly not what she observed personally with respect to his type of body movements and things like that. Ordinarily, of course, we do defer to a district judge's fact-finding. And I'm trying to figure out where this is all on the papers without him actually showing up, and where we have no crosses – you know, the witness – it's nothing but a piece of paper. Do we owe a deference to the district judge's reliance on him? Do we get to make our own mind up on the question? I think she's the one balancing the equities and – No, that's a different question. I'm asking, she believes him. Do we owe deference to her belief in him? Not balancing the equities. That's abuse of discretion, and we owe deference. I understand that. Simply and plain, I don't know what your responsibilities are and what type – I know what situations you owe deference. Okay. I don't know that. With respect to Dr. Bjork, there is an important point that kind of gets glossed over. It's not that these officers would forget the event in its entirety. That was never stated. And Dr. Bjork's – his opinion is it's lacking in the specific color and detail that you might expect. And if I just may – I think it's – I think the Court understands that in these cases, it's not just a question of where the other opposing attorney asks, well, was he shot? It's a question of all the circumstances and all the minute details that they go into during that. And jurors rely heavily not only on the officer's response, but on their body language and any other number of things. There was an internal investigation, correct? That is correct. Pretty extensive probably, huh, when there's a death? Yes. And it's probably fair to assume that there were reports generated? Yes, there were. Probably oral interviews? Yes. Recorded? I believe some were. I don't think all were. Okay. But again, this goes back to the notion of whether a refreshed recollection from the reports or from anything else is the same as this passage of time. And after this trigger point, after the highly traumatic event where the officers are told, well, put it behind you. I see my time is up, and I thank you for your attention. Okay. Thank you. I have three very quick points. Beginning in Excerpt from Record 40, there's a list which was submitted by the State of California as part of their initial discovery showing, and it goes on for four pages, all the information that was collected, the witnesses. It's an extensive list of what was documented as to what happened. The second on the idea that, well, it has all gone into contact with the court, I mean, my experience as an attorney in these sorts of circumstances is that the courts, what courts generally do is tell the person, go find yourself another lawyer and come back, which is, of course, exactly what Ms. Lowell tried to do. And with regard to the deference to the issue of the declaration of the expert, I don't know of any cases on point, but it seems to me the most analogous situation would be how the court reviews a determination on summary judgment, which is based solely on declarations, and the court does have the right to look at those kinds of things, you know. Okay. Thank both sides for a helpful argument in this case. Lowell v. California now submitted for decision.
judges: Hall, Fletcher W. , Paez